NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LOUIS PAUL TOSCANO, | |
| Plaintiff, | |
| v. | Civil Action No. 08-3083 (GEB) |
| | **MEMORANDUM OPINION** |
| CONNECTICUT GENERAL LIFE INSURANCE COMPANY and AT&T, INC., | |
| Defendant. | |

**BROWN, Chief Judge**

    This matter comes before the Court upon Plaintiff Louis Paul Toscano's ("Plaintiff") Motion to Change Venue (Docket Entry No. 6), Plaintiff's Motion for Removal to the Third Circuit (Docket Entry No. 20), Plaintiff's Motion for Reconsideration or alternatively Appeal from a determination in another matter (Docket Entry No. 20), Defendant Connecticut General Life Insurance Company's ("CGLIC") Motion to Dismiss (Docket Entry No. 16), and Defendant AT&T, Inc.'s ("AT&T") Motion to Dismiss (Docket Entry No. 28.) The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny Plaintiff's motion to change venue and dismiss Plaintiff's motions for removal and for reconsideration or appeal, and the Court will grant both Defendant CGLIC's and Defendant AT&T's motions.

1

**I.   BACKGROUND**

Plaintiff is a former employee of Defendant AT&T where he was employed from 1989 until 1992, at which time he was placed on AT&T's long term disability plan. See Civil Action No. 05-3539. Plaintiff brought a previous suit against AT&T in 2005, in which Plaintiff alleged that his placement on the long term disability plan was involuntary, while AT&T alleged that Plaintiff applied for, and was voluntarily assigned to, AT&T's long term disability plan. Id. Plaintiff also alleged that AT&T discriminated against him on the basis of his disability. On March 8, 2007, this Court held that Plaintiff's action against AT&T was time barred, and it was dismissed. The Third Circuit affirmed this Court's decision. Plaintiff filed a subsequent lawsuit against AT&T on February 4, 2008. See Civil Action No. 08-621. It was administratively terminated, however, after the District Judge in that matter denied Plaintiff's application to proceed in forma pauperis.

Likewise, in another previous suit before this Court, see Civil Docket No. 01-3669, Plaintiff brought a cause of action against CGLIC, which managed AT&T's long term disability plan. CGLIC initially found Plaintiff eligible to receive the benefits, but eventually stopped the payment of these benefits. On January 8, 2002, Plaintiff and CGLIC resolved that dispute by signing a Settlement Agreement, in which CGLIC agreed to make monthly payments of disability benefits to Plaintiff in accordance with the terms of the AT&T Long Term Disability Plan for Occupational Employees, and CGLIC agreed to make a separate payment to Plaintiff of $1,000.00. As a result of the executed Settlement Agreement, this Court, on December 13, 2001, dismissed the action, giving Plaintiff sixty days to move to reopen the matter should the settlement agreement fail to be consummated. Plaintiff, notwithstanding the aforesaid history, filed another complaint against CGLIC. See Civil Docket No. 05-4833. There, this Court held that the second action was barred under the plain

meaning of the Settlement Agreement and under the doctrine of claim preclusion.

Turning to the instant dispute, Plaintiff filed a complaint against CGLIC on June 23, 2008, ("Complaint") alleging that "the Morris County Office of Personnel removed [Plaintiff's] name from the eligibility list for the position of Human Services Specialist 2 for good cause" and that Plaintiff received notice of this action on March 26, 2008. (Docket Entry No. 1 at 2.) Plaintiff filed an amended complaint on September 22, 2008, ("Amended Complaint") adding AT&T as a defendant.[1] (Docket Entry No. 18.) Plaintiff alleges that he appealed the removal of his name, arguing that good cause did not exist. (Id. at 3.) Plaintiff alleges that he "attribute[s] [his] inability to return to this job and relinquish [his] disability status to [CGLIC] in its capacity to administer [his] former employer, AT&T's long-term disability program." (Id.) Plaintiff also alleges that he was fired from AT&T "while on temporary disability and involuntarily [moved him] from the payroll to long-term disability." (Id.) Further, Plaintiff alleges that CGLIC "failed to inform [him] that [he] was eligible for the customary unemployment compensation." (Id.) Plaintiff also alleges that CGLIC's actions "contributed in maintaining [New Jersey State Division of Vocational Rehabilitation Services' ("NJDVRS")] influence on [his] situation," leading him to eventually file a complaint against them. See also Toscano v. State of N.J. Dep't of Labor & Workforce Development, Civil Docket No. 07-1796.

Plaintiff also alleges that the work that CGLIC did for Plaintiff "through the AT&T long-term disability plan was . . . a contract under duress" because he was never told that "ERISA laws

---

[1] The Court notes that Plaintiff mentions the New Jersey Division of Vocational Rehabilitation Services and the Morris County Office of Personnel in his Amended Complaint, but because these entities have not been named as defendants, the Court will not treat them as such.

allow for the action of placing [him] into its program without consent." Plaintiff alleges that it constitutes duress because "[w]ithout disclosure by its employees of the unemployment option, the defendants were able to perform its [sic] actions . . . under duress." To this end, Plaintiff avers that "any settlement contract [he] entered [into] with the defendant" was done under duress. (Id. at 4.) Plaintiff also states that any settlement agreement that he has with the defendants is inapplicable because this case involves Plaintiff's right to return to work in a position he held for approximately three years with Morris County prior to his employment with AT&T.

Plaintiff alleges that "the defendants' action created barriers which prevent [his] reemployment under an employer for whom [he] previously worked" and "brought to an end a career plan which otherwise would have led to a job where [he] had proven abilities" and "deprived [him] of opportunities to buy back [his] State government pension time and utilize the Governor's Student Loan Forgiveness Program" and "cost [him] the opportunity to sever ties to the disability system." (Id. at 5.)

## II.   MOTION TO CHANGE VENUE

On July 28, 2008, Plaintiff filed a Motion to Change Venue. (Docket Entry No. 6.) Plaintiff, in his submission, states that he "acknowledge[s] that this case has not been an object of mishandling by Court personnel." However, Plaintiff alleges that in another action that he had previously brought before another judge in the District Court, that six documents were mishandled and that he had to "recreate all the lost documents," resulting in a "stressful period" that "made it difficult for [Plaintiff] to monitor" the other pending matters that he had before the courts. (Id. at 3 to 4.) Due to the alleged "mishandling," Plaintiff avers that he now has "to hand deliver all documents [he] file[s] with the

Court to make sure they are not mishandled." (Docket Entry No. 6 at 4.) Neither Defendant responded to the motion.

A motion to change venue to a more convenient forum is brought pursuant to 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." In so considering such a change of venue, a district court must consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). It is the movant's burden to establish the need for the venue change. Id.

Plaintiff has not met his burden. The Court concludes that Plaintiff's desire to hand-deliver documents to the Court is not reason enough to find that "convenience" requires the change of venue to Newark. The interests of justice would not be better served in Newark. Plaintiff neither alleges any "mishandling" of documents at the hands of this Court nor cites any case law that would compel this Court to find that justice would be better served in Newark. For these reasons, Plaintiff's Motion to Change Venue is denied.

### III. MOTION FOR REMOVAL TO THIRD CIRCUIT

By letter dated September 22, 2008, Plaintiff requests that the Court remove this matter to the Third Circuit. (Docket Entry No. 20.) The Court construes this submission as a Motion for Removal that has been improperly filed. However, the Court, for the purpose of comprehensively addressing all of Plaintiff's requests, will treat his letter as a motion and address it as such.

The Court concludes that there is no legal authority that grants power to a New Jersey District Court to "remove" a case from its own jurisdiction to the Third Circuit in this situation. See, e.g., 28 U.S.C. § 1295. Because Plaintiff has not cited any precedent or other meritorious argument to support his request, the Court will deny Plaintiff's motion.

**IV.   MOTION FOR RECONSIDERATION OF DENIAL OF PLAINTIFF'S <u>IN FORMA PAUPERIS</u> APPLICATION OR APPEAL**

By the same letter dated September 22, 2008, Plaintiff seemingly contests the Court's determination that he does not qualify for <u>in forma pauperis</u> status. However, in this action, this Court granted Plaintiff's <u>in forma pauperis</u> application on July 10, 2008. (Docket Entry No. 3.) Therefore, the Court, although it construes Plaintiff's September 22, 2008 letter as a motion for reconsideration, it dismisses Plaintiff's motion as moot since the Court granted Plaintiff's application in the first instance.

Insofar as Plaintiff is appealing the determination of another judge in another matter, this Court does not have jurisdiction to consider appeals from matters decided by other District Court judges. For this reason, Plaintiff's motion is also dismissed.

**V.   DEFENDANTS CGLIC'S AND AT&T'S MOTIONS TO DISMISS**

**A.   Standard of Review**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in a light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth "'fair notice of what the

. . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1964 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint will survive a motion under Rule 12(b)(6) if it states plausible grounds for plaintiff's entitlement to the relief sought. Id. at 1965-66 (abrogating Conley's standard that the "complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). In other words, it must contain sufficient factual allegations to raise a right to relief above the speculative level. Id. at 1965.

The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1420 (3d Cir. 1997) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents. See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993), cert. denied, 510 U.S. 1042 (1994). In addition, in conducting its analysis, the court must "liberally construe" pleadings by pro se litigants. Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003).

"[W]hile res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)."[2] Ray v. Fed. Ins. Co./CHUBB,

---

[2] The Third Circuit uses the term "claim preclusion" when referring to the traditional doctrine of res judicata. See United States v. Atholone Indus., 746 F.2d 977, 983 n.4 (3d Cir. 1984) (equating claim preclusion with res judicata or "the preclusive effect of a judgment in foreclosing relitigation of the same causes of action" and equating issue preclusion with collateral estoppel or "the effect of a judgment in foreclosing relitigation of a matter that has been litigated and decided").

2008 U.S. Dist. LEXIS 102824, at * 5-*6 (E.D. Pa. Dec. 19, 2008) (citing Connelly Found. v. School Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972)).  "Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privites; and (3) a subsequent suit based on the same cause of action." Churchill v. Star Enters., 183 F.3d 184, 194 (3d Cir. 1999) (citation and internal quotes omitted). See also Saudi v. Acomarit Mars. Servs., S.A., 114 Fed. Appx. 449, 454 (3d Cir. 2004) (setting out three elements of claim preclusion).  "Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit." Churchill, 183 F.3d at 194 (citing United States v. Athlone Indus., Inc., 746 F.2d 977, 984 (3d Cir. 1984)).  A court should consider "the essential similarity of underlying events giving rise to the various legal claims" when determining whether a subsequent suit is based on the same cause of action as one brought previously.  Davis v. United States Steel Supply, 688 F.2d 166, 171 (3d Cir. 1982).

"[U]nder the doctrine of [claim preclusion] a judgment entered in an action conclusively settles that action as to all matters that were or might have been litigated or adjudged therein." Partmar Corp. v. Paramount Pictures Theatres Corp., 347 U.S. 89, 90-91 (1954).  Moreover, "it is well settled, as a general proposition, that a judgment or decree, though entered by consent or agreement of the parties, [has preclusive power] to the same extent as if entered after contest." Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp., 40 F.3d 1416, 1429 (3d Cir. 1994) (quoting Keystone Bldg. Corp. v. Lincoln Savs. & Loan Ass'n, 360 A.2d 191, 194 n.6 (Pa. 1976)) (citation and internal quotes omitted); see also Nobel v. Morchesky, 697 F.2d 97, 102 n.8 (3d Cir. 1982) (holding that a settlement agreement can preclude later actions when the district court terminates the

8

action with prejudice) (citing Bearoff v. Bearoff Brothers, Inc., 327 A.2d 72 (Pa. 1974)).

When a party's argument rests upon the premise that a settlement agreement precludes later litigation, it may be noted that "[s]ettlement agreements are often treated as contracts, and basic contract principles apply." Emerson Radio Corp. v. Stelling, 52 Fed. Appx. 173, 178 (3d Cir. 2002) (citing In re Cedant Corp. Prides Litig., 233 F.3d 188, 193 (3d Cir. 2000)). "[G]iven that fact, a court should endeavor to stay within the 'four corners' of the agreement and abide by the plain meaning of what the parties have agreed to." Emerson, 52 Fed. Appx. at 178 (citing N.Y. State Elec. & Gas Corp. v. Fed. Energy Reg. Comm'n, 875 F.2d 43, 45 (3d Cir. 1989)).

### B.    ANALYSIS IN REGARD TO CGLIC's MOTION TO DISMISS

CGLIC argues that the Court should dismiss Plaintiff's Amended Complaint[3] "based on the doctrine of claim preclusion as the claims asserted in the instant action were the subject of two prior actions by the same plaintiff against CGLIC." (Docket Entry No. 16-4 at 4.) CGLIC asserts that "[o]n July 6, 2001, plaintiff commenced suit against CGLIC in which he alleged that CGLIC wrongfully terminated his benefits and sought an Order reinstating those benefits." (Id. at 5.) CGLIC states that the July 6, 2001 action "was resolved and a Settlement Agreement and General Release [were] executed by plaintiff on January 8, 2002." (Id.) CGLIC points out that the July 6, 2001 action was dismissed with prejudice. (Id. at 6.) CGLIC also states that "plaintiff filed a second action against CGLIC on October 5, 2005" in which "plaintiff sought damages based on CGLIC's

---

[3] CGLIC moved to dismiss Plaintiff's June 23, 2008 complaint, but later wrote a letter to the Court which requested that the Court treat CGLIC's motion as that to dismiss Plaintiff's September 22, 2008 amended complaint. (Docket Entry No. 22.) The Court will grant CGLIC's request and treat it as such.

alleged wrongful determination of his disability status." (Id.) CGLIC filed a motion to dismiss the October 5, 2001 action, and the District Court granted the motion to dismiss, concluding that "[t]he plain meaning of the Settlement Agreement at issue here unambiguously prevented [Plaintiff] from initiating the Second Action." (Id.) Further, CGLIC points out that the Third Circuit "affirmed the District Court's conclusions." (Id.)

CGLIC argues that "again plaintiff's [c]omplaint includes claims and allegations related to CGLIC's determination of his disability status" and "plaintiff alleges that CGLIC"s determination of his disability status, payment of disability benefits, and management of his disability claim" have caused the instant injury, namely "created barriers which prevent [his] reemployment", "deprived [him] of opportunities to buy back [his] State government pension time and utilize the Governor's Student Loan Forgiveness Program", and "cost [him] the opportunity to sever ties to the disability system." (Id. at 7) (internal quotes and citation omitted). CGLIC, therefore, argues that because "the claims asserted by plaintiff are based on the same set of facts and relate to the same cause of action which was raised and resolved in the First Action" by the Settlement Agreement and subsequent dismissal of the action with prejudice, "plaintiff's instant [c]omplaint against CGLIC must be dismissed" pursuant to the doctrine of claim preclusion. (Id. at 7 to 9.)

Plaintiff argues in the Amended Complaint that the Settlement Agreement does not apply because he signed it while under duress. Plaintiff alleges that it was signed under duress in his Amended Complaint because he states that CGLIC never told him that he could have received unemployment benefits. (Docket Entry No. 18 at 4.) Plaintiff also submitted a letter in opposition to the Motion to Dismiss in which he states that due to documents that he states were misplaced in another matter that he had before a different judge, he was thus prejudiced and he will not respond

further to this Court. (Docket Entry No. 21.) The Court also received a letter from Plaintiff on January 22, 2009, in which Plaintiff requested oral argument. The Court, however, hereby denies this request because oral argument is unnecessary. (Docket Entry No. 31.)

The release provision of the Settlement Agreement between the parties provides that Plaintiff:

> agrees not to sue and to irrevocably and unconditionally remise, release, waive and forever discharge CGLIC from any and all claims, causes of action, damages, physical or mental injuries, loss of earnings or earning capacity, liabilities, expenses, fees and costs, including attorneys' fees and costs, which [Plaintiff] ever had, or now has, whether known or unknown, for any losses, damages, punitive damages, treble damages, injuries, indemnity, expenses and compensation of every kind or nature whether anticipated or unanticipated, resulting from, arising out of, connected directly or indirectly with or relating in any way to (i) the Plan under which [Plaintiff] was a participant and (ii) any and all matters regarding the Plan and the benefits available thereunder, including but not limited to breach of contract, breach of warranties, deceptive trade practice, negligence, negligent misrepresentation, negligent performance of contractual duties, promissory estoppel, breach of the duty of good faith and fair dealing, breach of ERISA duties, prima facie tort, claims for benefits, claims for discrimination of any basis, claims for punitive or consequential damages, violation of any statutes, including unfair trade practices acts and unfair insurance practices acts, or statutory or administrative rules, regulations or codes, and claims for equitable relief, including but not limited to claims for reinstatement, declaratory judgment, resulting trust or constructive trust and, without in any manner limiting the foregoing, from all matters which are set forth or which might have been set forth in the Complaint filed in the Civil Action.

(Docket Entry No. 16-3 at 50 to 51.) Plaintiff's signature appears at the end of the document; the signature is immediately preceded by the following language:

> WHEREFORE, INTENDING TO BE LEGALLY BOUND, LOUIS TOSCANO, HAS COMPLETELY READ THE TERMS OF THIS SETTLEMENT AGREEMENT AND FULLY UNDERSTANDS THEM AND VOLUNTARILY ACCEPTS THEM FOR THE PURPOSE OF MAKING A FULL AND FINAL COMPROMISE, ADJUSTMENT AND SETTLEMENT OF ALL CLAIMS, DISPUTED OR OTHERWISE, ON ACCOUNT OF THE MATTERS AND THINGS ABOVE MENTIONED AND INDICATES HIS AGREEMENT BY SIGNING BELOW.

(Docket Entry No. 16-3 at 53.)

Although "[a] signed release is binding upon the parties unless executed and procured by fraud, duress, accident or mutual mistake," and while "a release covers only those matters which may fairly be said to have been within the contemplation of the parties when the release was given," the Court concludes that there is nothing presented that would indicate that Plaintiff signed the Settlement Agreement under duress. Bowersox Truck Sales & Serv. v. Harco Nat'l Ins. Co., 209 F.3d 273, 279 (3d Cir. 2000) (citations and internal quotations omitted).

The Court notes that "[t]he general rule for construction of releases is that the intention of the parties must govern" and that "this intention must be gathered from the language of the release." Id. (citation omitted). However, inquiry into the intention of the parties is not necessary at this juncture because the theory of claim preclusion applies to the matter at hand. A very similar suit was previously brought before this Court by Plaintiff against CGLIC, it was adjudicated by this Court, and that decision was affirmed by the Third Circuit on appeal. See Toscano v. Conn. Gen. Life Ins. Co., No. 07-1629, 288 Fed. Appx. 36 (3d Cir. 2008).

The Court concludes that for largely the same reasons upon which the previous action was dismissed, the Court will dismiss this action as well. As the Court of Appeals for the Third Circuit pointed out in its July 30, 2008 opinion in the previous suit, "[t]he plaintiff is required to 'present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence." Toscano, 288 Fed. Appx. at 38 (citing Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)). Because Plaintiff's instant claims also revolve around the same events, namely the time period when Plaintiff left work at AT&T and when CGLIC placed him on long-term disability, this is the same cause of action as that which has been previously dismissed. The doctrine of claim

preclusion applies because these are the same parties that were engaged in the previous lawsuit, the theory of recovery is the same in that Plaintiff alleges that his wrongful placement on long-term disability caused him harm, and because this cause of action is the same as the prior suit in that it is between the same parties who previously agreed upon the Settlement Agreement and thus executed that agreement. The Settlement Agreement thus controls. For these reasons, Defendant CGLIC's Motion to Dismiss the Amended Complaint is granted pursuant to the theory of claim preclusion.

        C.        **ANALYSIS IN REGARD TO AT&T'S MOTION TO DISMISS**

Defendant AT&T filed its Motion to Dismiss on November 18, 2008, arguing that the Court should dismiss Plaintiff's Amended Complaint because "Plaintiff has failed to state a claim under either Title VII or the Rehabilitation Act," because Plaintiff "fails to state any claim under the ADA because such claims are barred by the doctrine of claim preclusion as Plaintiff made the same allegations in an earlier lawsuit against AT&T which was dismissed by this Court," and finally because "Plaintiff's claims under the ADA are untimely." (Docket Entry No. 28-3 at 5 to 6.) In respect the claim that Plaintiff asserts under the ADA, AT&T argues that the doctrine of claim preclusion applies because Plaintiff "learned of his eligibility for unemployment benefits in November of 2005" and "[a]t that time, Plaintiff's First Action against AT&T was still pending before this Court" meaning that "Plaintiff failed to amend his complaint to add this additional claim and, therefore, this claim is precluded." (Id. at 14.) Specifically, AT&T points out that "[t]he doctrine of claim preclusion requires that a party bring all claims he has against a defendant in the same suit" but "[i]f a Plaintiff fails to do so, any claim that could have been brought in a prior suit will be precluded." (Id. at 13 to 14) (emphasis and citation omitted).

AT&T also argues that Plaintiff's claims are time barred and therefore, the Court should dismiss Plaintiff's Amended Complaint. AT&T states that "plaintiff's EEOC charge was filed on or about February 24, 2005," that he "received a Dismissal and Notice of Right to Sue from the EEOC dated March 15, 2005, which stated that the charge was not timely filed," and that the "Amended Complaint in this action was filed more than 16 years after his employment with AT&T terminated," and that for these reasons, because the events alleged "occurred more than 300 days prior to the filing of his EEOC Charge . . . any ADA litigation claim relating to such events is barred by the statute of limitations." (Id. at 15 to 16.)

AT&T also argues that any claim raised "under Title VII should also be dismissed because Title VII does not protect against discrimination on the basis of disability." (Id. at 16.) AT&T also asserts that Plaintiff failed to exhaust his administrative remedies for a Title VII action, and therefore, Plaintiff's Amended Complaint may be dismissed on this ground as well. (Id. at 16 to 17.)

Moreover, AT&T argues that "[t]o the extent Plaintiff purports to base any of his claims on the Vocational Rehabilitation Act of 1973, these claims must be dismissed as Section 503 of the Rehabilitation Act does not provide a private right of action for aggrieved individuals," which are rather "handled exclusively by the Department of Labor." (Id. at 17.)

Plaintiff responded by filing a letter dated November 26, 2008, in which he stated that he is "not inclined to pursue this highly prejudiced case at this point until your Court moves it into the Third Circuit" because filing opposition to AT&T's motion "would be an additional waste of time . . . that . . . the Court already wasted over the lost documents." (Docket Entry No. 29.)

The Court initially notes that due to the response provided by Plaintiff, it could be construed that Plaintiff has communicated that he no longer wishes to participate in these proceedings, a

14

statement amounting to a voluntary dismissal.  See Fed. R. Civ. P. 41.  However, it is clear from the November 26, 2008 letter that Plaintiff's actual intent is that he does not wish to dismiss the action; he simply does not wish to participate in the action before this Court.  Because the Court finds no grounds upon which to recuse itself or otherwise change venue, as has already been explained, and because there is no legal procedure to which the Court can cite to "transfer" this matter to the Third Circuit, a court of appellate jurisdiction, the Court will therefore address the merits of Defendant AT&T's motion to dismiss.

The Court concludes that the doctrine of claim preclusion applies and that Defendant AT&T's Motion to Dismiss should be granted.  All of the factual allegations that Plaintiff asserts in the Amended Complaint could have been presented in the previous suit as the instant allegations are arising out of the same occurrence as those claims previously brought against AT&T.  See Lubrizol Corp. v. Exxon Corp., 929 F.2d 960, 963 (3d Cir. 1991)).

Specifically, in Plaintiff's 2005 suit against AT&T, he alleged damages for his wrongful termination from the company and the issues that surrounded his placement on long term disability. That action was dismissed as time barred, and the dismissal was affirmed by the Third Circuit on appeal.  See Toscano v. AT&T Corporate Headquarters, No. 07-2438, 282 Fed. Appx. 118 (3d Cir. 2008).  Because there is a final judgment involving the same parties in a previous suit, and because this suit is based upon the same cause of action in that it involves the time period when Plaintiff left work at AT&T and when CGLIC placed Plaintiff on long-term disability, this is the same cause of action which has previously been brought before the Court and has been adjudicated. The doctrine of claim preclusion applies because these are the same parties that were engaged in the previous lawsuit, the theory of recovery is the same in that Plaintiff alleges that his wrongful placement on

long-term disability caused him harm, and because this cause of action is the same as the prior suit that was dismissed as time barred. For these reasons, Defendant AT&T's Motion to Dismiss the Amended Complaint is granted pursuant to the theory of claim preclusion.

## VI.     CONCLUSION

For the foregoing reasons, the Court denies Plaintiff's Motion to Change Venue, dismisses Plaintiff's Motion to Remove to the Third Circuit, dismisses Plaintiff's Motion for Reconsideration, grants Defendant CGLIC's Motion to Dismiss, and grants Defendant AT&T's Motion to Dismiss. An appropriate form of Order accompanies this Opinion.

Dated: February 11, 2009

                                                         s/ Garrett E. Brown, Jr.
                                                GARRETT E. BROWN, JR., U.S.D.J.